IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA



FILED

AUG 22 2014

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

| | |
|---|---|
| DOROTHY FRANTZ, by and through JACALYN SPAIN, next friend and attorney-in-fact,<br><br>        Plaintiff,<br><br>vs.<br><br>ED LAKE, Director of Oklahoma Department of Human Services, and JOEL NICO GOMEZ, Director of Oklahoma Health Care Authority,<br><br>        Defendants. | No. CIV-14-117-W |

## ORDER

This matter comes before the Court on the Motion for Summary Judgment filed pursuant to Rule 56, F.R.Civ.P., by plaintiff Dorothy Frantz ("Frantz"), by and through Jacalyn Spain, next friend and attorney-in-fact ("Spain"). Defendants Ed Lake, in his official capacity as Director of Oklahoma Department of Human Services ("DHS"), and Joel Nico Gomez, in his official capacity as Director of Oklahoma Health Care Authority ("OHCA"), have responded. Frantz has filed a reply, and based upon the record, the Court makes its determination.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and [that she] . . . is entitled to judgment as a matter of law." Rule 56(a), supra. At this stage of the litigation, the Court does not evaluate the credibility of the witnesses, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), or "weigh the evidence and determine the truth of the matter . . . ." Id. at 249. Rather, the Court must decide "whether there is a genuine issue for trial . . . [and] there is no [triable] issue

. . . unless there is sufficient evidence favoring the nonmoving party for a [factfinder] . . . to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," id. at 254, "presents a sufficient disagreement to require submission to a [factfinder] . . . or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

"In making this determination, . . . [the Court] must 'examine the record and all reasonable inferences that might be drawn from it in the light most favorable to [the defendants, as] the non-moving part[ies].'" Pinkerton v. Colorado Department of Transportation, 563 F.3d 1052, 1058 (10th Cir. 2009)(quoting T-Mobile Central, LLC v. Unified Government of Wyandotte County, 546 F.3d 1299, 1306 (10th Cir. 2008)(citations omitted)). That is to say, the Court must accept the defendants' account of the events giving rise to this lawsuit to the extent it is supported by the record and not based upon mere conclusory allegations. E.g., McKibben v. Chubb, 840 F.2d 1525, 1528 (10th Cir. 1988).

Frantz brought this action under title 42, section 1983 of the United States Code, and she has contended that both Lake, as DHS Director, and Gomez, as OHCA Director, have administered the federally-funded Medicaid program in the State of Oklahoma in violation of title 42, sections 1396a(a)(8), 1396p(c)(1)(I) and 1396p(c)(2)(C) of the United States Code and title 20, section 416.1201 of the Code of Federal Regulations, by determining that Frantz is ineligible for certain Medicaid benefits. The ultimate injunctive

and declaratory relief sought by Frantz is a finding by the Court that she qualifies for, and is entitled to receive, those benefits.

In June 2010 and again in November 2010, Frantz became a resident of Dunaway Manor Nursing Home ("Dunaway Manor") in Guymon, Oklahoma, see Doc.31-2, and she currently resides in that facility. See id. On August 9, 2013, Frantz loaned Spain, her daughter and only child as well as her attorney-in-fact pursuant to a Durable Power of Attorney and Designation of Conservator or Guardian executed on June 18, 2004, see Doc. 1-1, the sum of $98,000.00 in the form of a certificate of deposit and cash in exchange for a promissory note in that amount. See Doc. 1-3. At the time of the exchange, Frantz was ninety (90) years old and had a life expectancy of 4.60 years. See id. at 1; Doc. 24-2 at 2.

The promissory note reads in pertinent part that Spain promises to pay Frantz, and the record undisputedly reflects that Spain intends to repay Frantz, e.g., Affidavit of Jacalyn Spain (June 26, 2014) at p. 1, ¶ 5 (hereafter "Spain Affidavit"),[1]

> [f]our (4) annual installments commencing on August [9], 2014, and continuing on the same day of each and every year thereafter, with each such installment, except the last installment, to be in the sum of $25,506.45, and the last installment to be in the full amount of the then remaining unpaid balance of principal and interest. The last installment shall be due and payable on August 9, 2017. . . .

Doc. 1-3 at 1.

---

[1] Frantz has stated in her reply that Spain has already paid her the sum of $26,592.63 "under the promissory note by paying . . . [her] personal obligations . . . ." Doc. 35 at 5; e.g., id. at 13. While the Court finds such fact irrelevant to the determination of whether the defendants erred in denying Frantz's application for Medicaid benefits, the Court disagrees with Frantz's charactertization of Spain's voluntary and gratuitous payments of any amounts owed by Frantz to Dunaway Manor and finds that such payments do not qualify as one of the "[f]our (4) annual installments," or any part thereof, due under the promissory note.

3

The promissory note further provided, inter alia, that Spain had the right to prepay the indebtedness evidenced by the note without penalty, see id., and that the note could not be cancelled upon Frantz's death. See id. at 2. The unsecured promissory note also provided that "[a]ll payments . . . shall be paid in equal amounts . . . without any deferral or balloon payment of any amounts," id. at 1, and that neither Frantz nor Spain could "grant, bargain, sell, assign, convey or transfer th[e] note or any payments [t]hereunder except [Frantz could] . . . assign or transfer th[e] note for estate planning purposes to a revocable trust . . . ." Id. at 2.

By letter dated August 26, 2013, and processed September 12, 2013, Frantz through legal counsel applied for Medicaid benefits and requested that DHS "make an assessment of her resources and income." Doc. 1-5 at 1. Frantz represented that she was currently receiving a monthly net income of $1,176.00 from Social Security Administration, see id. at 2, 7; Doc. 1-6 at 1, and in 2012, had received a gross amount of $1,280.90. See Doc. 1-5 at 2. She reported that she also was receiving a monthly pension in the amount of $190.19 from John Hancock Life Insurance Company. See id.; Doc. 1-6 at 1.

Frantz advised that she was paying a monthly premium in the amount of $104.90 for Medicare and a monthly premium of $191.60 for supplemental insurance through United Healthcare. See Doc. 1-5 at 2, 8; Doc. 1-6 at 1. She also reported that she had a monthly expense of $3,3360.00 payable to Dunaway Manor, see Doc. 1-5 at 8, and monthly pharmacy expenses of approximately $94.62. See id.

Frantz included as resources a checking account at Bank of the Panhandle, with a balance of $29,706.97 as of August 7, 2013, see Doc. 1-5 at 2, 5, a certificate of deposit,

4

with a balance of $60,641.58, as of August 7, 2013, see Doc. 1-5 at 2; Doc. 1-6 at 10, and a prepaid burial policy through Guymon Elmhurst Cemetery, which has a value of $387.75. See Doc. 1-5 at 2.

At that time, Frantz also owned a life estate in property located at 1610 N. East Street, in Guymon, Oklahoma, which she reported had no value. See id.[2] She also reported as resources items in a safe deposit box at Bank of the Panhandle. See id.

In connection with transferred property or assets, Frantz indicated that she had cashed in a certificate of deposit, and had deposited the sum of $20,001.32 in her checking account at the Bank of the Panhandle. See Doc. 1-5 at 2, 5. She also revealed the existence of the promissory note executed by Spain on August 9, 2013, see id. at 2, and in connection therewith, she advised that she had requested "[a]n expert opinion," id., from attorney Robert T. Luttrell III regarding the note. See id.

Counsel advised that Frantz's resources totaled $90,348.55, after exemptions, and she concluded that

> [a]fter subtracting . . . Frantz's $2,000 resource allowance there was $88,348.55 left to be spent down. . . . Frantz executed the promissory note in the amount of $98,000 on August 9, 2013. As a result . . . [her] resources are below the resource limit. Therefore, . . . Frantz was eligible for benefits as of August 9, 2013 and her benefits should be effective as of that date.

Id. at 3.

DHS issued its "Notice of Denial," see Doc. 1-8, on December 18, 2013. The stated reasons for the denial of Medicaid long-term care benefits were:

---

[2] In its Notice of Denial, DHS agreed "that the life estate ha[d] no value," Doc. 1-8 at 2, and thus, was "not a countable resource . . . ." Id.

(1) citing the exchange on August 9, 2013, of assets consisting of a certificate of deposit and cash for the promissory note, DHS deemed the promissory note both "a resource," id. at 1, ¶ 1 (citation omitted), and "a trust-like device worth more than $2,000," id.;[3] and

(2) if the promissory note had no value, then Frantz's acceptance of the same in return for property worth more than $2,000 represented a transfer without receipt of fair market value in return. See id. ¶ 2 (citation omitted).

> DHS advised that the transfer was subject to a penalty of 609 days beginning on the date . . . Frantz became "otherwise eligible." In this case, . . . Frantz was otherwise eligible on September 14, 2013, when her checking account fell below $2,000. Therefore, . . . Frantz is disqualified from Medicaid long-term care benefits for 609 days from September 14, 2013.

Id. (citation omitted).

The "expert opinion" to which Frantz's counsel referred in her letter dated August 26, 2013, and indicated would be forthcoming was set forth in a letter written, as stated, by attorney Luttrell. See Doc. 1-4. In his letter dated January 17, 2014, Luttrell opined that Spain's note was "a reasonable promissory note based on the circumstances under which it was executed." Id. at 1. Luttrell further opined that the note was "of no value in the hands of a third party or in the secondary market," id., because it "specifically provide[d]

---

[3]DHS stated in its Notice of Denial that it

> agree[d] with . . . [Frantz'] claim that the Promissory Note was overvalued. CD #7983 had a balance of $60,641.58 on August 7, 2013 and a withdrawal of $24,161,93 was made from [her] . . . checking account on September 13, 2013. Thus, the total amount transferred in exchange for the Promissory Note was $84,804.

Doc. 1-8 at 1, ¶ 1.

6

it [could not] . . . be assigned . . . , so no sale [was] . . . possible." Id. at 1-2. Luttrell's letter was not provided to DHS before it issued its "Notice of Denial," see Doc. 1-8, on December 18, 2013. See Affidavit of Susan K. Hohmann (July 22, 2014) at 1, ¶ 8 (hereafter "Hohmann Affidavit").

In resolving the issues surrounding DHS' denial of Frantz's application for Medicaid long-term care benefits, the Court finds first as to DHS' characterization of the promissory note as a "trust-like device worth more than $2,000," Doc. 1-8 at 1, ¶ 1, that the Court has already determined in Peterson v. Lake, No. CIV-13-1235-W (W.D. Okla. June 30, 2014), that a virtually-identical promissory note does not constitute a "trust-like device." Accordingly, because the record fails to present a sufficient disagreement[4] to require

---

[4]As the Court stated in Peterson, the Court finds correct the statements of the Honorable Robin J. Cauthron in Lemmons v. Lake, 2013 WL 1187840 (W.D. Okla. March 21, 2013), vacated as moot, 2013 WL 6913757 (W.D. Okla. June 28, 2013).

> Congress amended the Medicaid Act to create . . . "trust rules" in order to close a loophole exploited by some applicants: Because trusts frequently do not qualify as resources under the regular rules, some applicants placed their assets and money in trusts in order to evade the Medicaid Act's resource limitation. Now, 42 U.S.C. § 1382b(e) deems trusts and trust-like devices resources unless explicitly excluded. [SSA's Program Operations Manual System ("POMS")] define[s] a trust-like device as "a legal instrument, device, or arrangement, which may not be called a trust under State law, but is similar to a trust." POMS SI 1120.201(B)(5). A trust-like device must include: (1) a grantor (2) who transfers property (3) to an individual or entity with fiduciary obligations (a trustee) (4) "with the intention that it be held, managed or administered by the individual or entity for the benefit of the grantor or others."

Lemmons *4 (citations omitted).

There is no dispute in this case that assets were transferred from Frantz to Spain or that she (Frantz) qualifies as a "grantor." The defendants, however, have presented no evidence from which a factfinder may infer that Frantz transferred her assets to Spain in any trustee capacity or that Spain has any intention of using or holding these assets for Frantz's benefit. See Gragert v. Hendrick, 2014 WL 287238 (W.D. Okla. January 24, 2014).

DHS has attempted to distinguish this case from Peterson on the grounds that Spain position as Frantz's attorney in fact imposed upon her certain fiduciary duties. Even assuming that those duties put Spain in the role of trustee, there is no evidence of the fourth element: that the

7

submission of this issue to a factfinder, Frantz is entitled to judgment as a matter of law with regard to this issue.

Accordingly, the remaining issues presented by Frantz's motion and the defendants' response pertain only to whether the promissory note is "an available resource," whether the transfer of money in exchange for the promissory note is subject to a transfer penalty and whether section 1983 provides a cause of action in this instance for Frantz.

"Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act[, 42 U.S.C. §§ 1396-1396v,] to provide federal financial assistance to States that choose to reimburse certain medical costs incurred by the poor." Blum v. Yaretsky, 457 U.S. 991, 993-94 (1982); e.g., Zelman v. Simmons-Harris, 536 U.S. 639, 667 (2002) (O'Connor, J., concurring)(Medicaid is a welfare program); Morris v. Oklahoma Department of Human Services, 685 F.3d 925, 928 (10th Cir. 2012)(quoting Brown v. Day, 555 F.3d 882, 885 (10th Cir. 2009))(Medicaid "administered cooperatively by states and the federal government to provide 'health care to persons who cannot afford such care'"). "If a state[, such as Oklahoma,] opts to participate, it receives financial assistance from the federal government, on the condition that the state operates its Medicaid program in compliance with federal statutory and regulatory requirements[,]" Brown, 555 F.3d at 885, and federal law requires a state's "plan for medical assistance must . . . provide . . . that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

---

transfer of assets was done with the intention that those assets be held, managed or administered by Spain for Frantz's benefit or for the benefit of others. See Spain Affidavit at 1, ¶ 13; id. at 2, ¶¶ 14-18.

8

One category of medical assistance provided by Medicaid is long-term care ("Medicaid LTC"), which pays for the care of individuals who live in institutions, such as nursing homes. E.g., id. § 1396a(a)(10)(A)(ii)(V). To qualify for Medicaid LTC, an individual must have countable resources of $2,000.00 or less and must not have disposed of any assets for less than fair market value during the last five (5) years. E.g., 42 U.S.C. §§ 1396p(c)(1)(A), 1396p(c)(1)(B)(I).

For purposes of Medicaid, the term "resource" is synonymous with the word "asset." E.g., 20 C.F.R. § 416.120(c)(3)("[r]esources means cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his . . . support and maintenance"); id. § 416.1201(a)(resources means cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his . . . support and maintenance). See Gragert v. Lake, 541 Fed. Appx. 853, 857 (10th Cir. 2013)(cited pursuant to Tenth Cir. R. 32.1)(section 416.1201 provides operable definition of a "resource").

"If the individual has the right, authority or power to liquidate the property . . . , it is considered a resource[, but] [i]f a property right cannot be liquidated, the property will not be considered a resource of the individual . . . ." 20 C.F.R. § 416.1201(a)(1). "Liquid resources are cash or other property which can be converted to cash within 20 days," id. § 416.1201(b),[5] and

---

[5]"Nonliquid resources are property which is not cash and which cannot be converted to cash within 20 days . . . . Examples of resources that are ordinarily nonliquid are loan agreements, household goods, automobiles, trucks, tractors, boats, machinery, livestock, buildings and land." 20 C.F.R. § 416.1201(c).

9

promissory notes "are ordinarily liquid." But that is because promissory notes are ordinarily transferable and hence convertible to cash. If a promissory note cannot be transferred . . . , then it is not convertible to cash and therefore not a resource.

Gragert, 541 Fed. Appx. at 857 (emphasis deleted)(citation omitted).

SSA, "[i]n addition to its regulations, . . . has issued a Program Operations Manual System ('POMS') 'through which [it] further construes the statutes governing its operations.'" Id. (quotation omitted); e.g., Washington State Department of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371 (2003)(POMS is set of publicly available operating instructions for processing Social Security claims). "Consistent with . . . [section] 416.1201, the relevant POMS provision states that 'assets of any kind are not resources if the individual does not have . . . the legal right, authority, or power to liquidate them.'" Gragert, 541 Fed. Appx. at 856 (quoting POMS § SI 01110.15)(footnote omitted). The promissory note executed by Spain expressly provides that neither Frantz nor Spain "may grant, bargain, sell, assign, convey or transfer this note or any payments[6] [t]hereunder . . . ." Doc. 1-3 at 2.[7]

Because the note cannot be converted to cash and is, therefore, illiquid under section 416.1201, the Court finds, in the absence of any evidence to the contrary, that the promissory note executed by Spain is not an available resource to be used in assessing

---

[6]See Gragert, 541 Fed. Appx. at 857 ("POMS indicate that notes count as resources for eligibility purposes unless there is 'evidence of a legal bar to the[ir] sale')(quoting POMS SI 01140.300 at D-1, D-3 (effective May 22, 2003)).

[7]DHS has argued that because it had not received Luttrell's letter until after it had issued its Notice of Denial, it acted correctly in determining that the note was a countable resource and cannot therefore be held liable. Even though DHS had not received Luttrell's "expert opinion" before it acted, DHS has not denied that it had notice of, and/or had received a copy of, the promissory note itself, see Hohmann Affidavit at 1, ¶¶ 5, 6, 7, which very clearly provides that it is not subject to being sold, assigned, conveyed or transferred. See Doc. 1-4 at 1-2.

10

Frantz's entitlement to Medicaid LTC. Accordingly, the defendants erred in determining otherwise.

Such finding is in accord not only with the circuit court's treatment of a similarly-drafted promissory note in Gragert, but also with cases in this district, wherein nontransferable promissory notes have been deemed "nonavailable" resources. See, e.g., Peterson, supra; Harper v. State of Oklahoma ex rel. Oklahoma Department of Human Services, No. CIV-10-514-R (W.D. Okla. March 22, 2011)(promissory note not liquid resource because, by its terms, neither note nor its payments were subject to assignment, sale or transfer).

In determining whether DHS also erred in determining that the transfer of assets resulted in a transfer penalty because in its opinion the promissory note has no fair market value, the Court has considered section 1396p(c) and the exception contained therein. For purposes of this lawsuit, section 1396p(c)(1)(A) "provide[s] that if an institutionalized individual . . . disposes of assets for less than fair market value on or after the look-back date . . . , the individual is ineligible for medical assistance . . . ." 42 U.S.C. § 1396p(c)(1)(A). "The look-back date . . . is a date that is 60 months[ ]," id. § 1396p(c)(1)(B)(I), before the date an individual has been institutionalized and has applied for medical assistance for nursing home care under a state plan. E.g., id. § 1396p(c)(1)(B)(ii)(I).

Section 1396p(c)(2)(C), however, provides that an individual shall not be ineligible for medical assistance by reason of a transfer of assets for less than fair market value if "the individual intended to dispose of the assets either at fair market value, or for other valuable consideration[.]" Id. § 136p(c)(2)(C). Moreover, Section 1396p(c)(1)(I) provides

11

"with respect to a transfer of assets, that the term 'assets' includes funds used to purchase a promissory note, . . . unless such note . . . . has a repayment term that is actuarially sound," 42 U.S.C. § 1396p(c)(1)(I)(I), "provides for payments to be made in equal amounts during the term of the loan, with no deferral and no balloon payments made," id. § 1396p(c)(1)(I)(ii), and "prohibits the cancellation of the balance upon the death of the lender." Id. § 1396p(c)(1)(I)(iii). The defendants have conceded in their response that the promissory note executed by Spain meets these three criteria. See Doc. 31 at 27. Accordingly, the Court finds that the instant transfer of assets in exchange for the promissory note does not subject Frantz to any penalties.

In their response, the defendants have also challenged Frantz's reliance on section 1983. In her complaint, Frantz alleged that she is eligible for Medicaid benefits and that DHS's denial of her application for the same violated, among other statutory sections, section 1396a(a)(8).[8] Case law teaches that section 1396a(a)(8) creates a private right of action that is enforceable through section 1983. E.g., Peterson, supra; Gragert v. Hendrick, 2014 WL 287238 *2; Oklahoma Chapter of American Academy of Pediatrics (OKAAP) v. Fogarty, 366 F. Supp.2d 1050, 1108 (N.D. Okla. 2005); Shanks-Marrs v. Lake, Case No. CIV-13-64-L (W.D. Okla. June 14, 2013) (Doc. 21). See Bryson v. Shumway, 308 F.3d 79 (1st Cir.2002); Sabree ex rel. Sabree v. Richman, 367 F.3d 180 (3d Cir. 2004);

---

[8]E.g., 42 U.S.C. § 1396a(a)(8)(state's "plan for medical assistance must . . . provide . . . that such assistance shall be furnished with reasonable promptness to all eligible individuals").

12

Doe v. Kidd, 501 F.3d 348 (4th Cir. 2007); Romano v. Greenstein, 721 F.3d 373 (5th Cir. 2013); Doe 1-13 v. Chiles, 136 F .3d 709 (11th Cir. 1998).[9]

Accordingly, the Court

(1) GRANTS Frantz's Motion for Summary Judgment [Doc. 23] filed on July 1, 2014, as to three of the issues[10] presented therein: the promissory note is neither an available resource nor a trust-like device and the transfer of assets in this case is not subject to a penalty; and

(2) ORDERS that judgment in favor of Frantz and against the defendants issue forthwith.

ENTERED this 22nd day of August, 2014.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[9] See Clayton ex rel. Clayton v. Lake, 2014 WL 223061 *3 (W.D. Okla. January 21, 2014) (section 1396p(c)(2)(C) provides adequate statutory foundation for lawsuit brought pursuant to section 1983). See also Lemmons, 2013 WL 1187840 *3.

[10] Having determined that Frantz is entitled to relief on these three issues, the Court has not addressed Frantz's argument in Proposition I that the doctrine of issue preclusion bars the defendants from denying medicaid benefits to Frantz. See Doc. 23 at 11.